UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SANJAY PATEL, on behalf of his minor child, )
R. P. )
 )
      Plaintiff, )
 ) Case No. 1:09-cv-0360-TWP-DML
  vs. )
 )
MENARD, INC., )
 )
      Defendant. )

## ENTRY ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff Sanjay Patel's ("Plaintiff"), on behalf of his minor child R.P, Motion for Partial Summary Judgment on the issue of comparative fault. Plaintiff has brought suit, on behalf of his injured minor child, against Defendant Menard, Inc. ("Menards") for negligence. Specifically, while Plaintiff and his family were shopping at Menards, a 160-pound column of fiberglass insulation fell onto Plaintiff's son, R. P. ("R.P."), knocking him backwards onto a concrete floor and causing severe injuries. In its Answer to Plaintiff's Complaint, Menards asserted a comparative fault affirmative defense, alleging that Plaintiff "caused or contributed to" R.P.'s injuries when he removed a roll of insulation that was adjacent to the insulation that fell onto R.P.

For purposes of the present motion, Plaintiff argues that Menards has no meaningful evidence to support its comparative fault theory, and, therefore, the affirmative defense should be stricken and dismissed. The Court respectfully disagrees. Because genuine issues of material fact exist, Plaintiff's Motion for Partial Summary Judgment (Dkt. 77) is **DENIED**.

*Legal Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

A motion for partial summary judgment as to an affirmative defense "presents a relatively unusual twist on the summary judgment procedures that are the daily fare of the federal district courts." *Holden v. Balko*, 949 F.Supp. 704, 706 (S.D. Ind. 1996). Generally, where, as here, a defendant pleads an affirmative defense, "the defendant asserts . . . that even if

the material factual allegations in the complaint are true, the defendant intends to prove additional facts that will defeat or reduce the relief sought by the plaintiff." *Id*. Therefore, for purposes of deciding the present motion, "the court will assume . . . that plaintiff[] can prove the essential elements of [his] negligence claim[] against the defendant[]." *Id*.

## *Background*

On January 11, 2008, Plaintiff, his wife, and his two sons (one of whom is R.P.) entered the Menards store in Avon, Indiana to buy fiberglass insulation. Normally, Menards kept its fiberglass insulation in an outdoors "drive-through warehouse," where customers could drive up and load the insulation into their vehicles. At the time of the accident, however, Menards was being remodeled and had moved its supply of fiberglass insulation to its garden center. There, insulation "bales" or "columns"[1] were placed three-deep against a wall.

Each insulation column consisted of 18 individual "bundles" or "rolls"[2] of insulation. The rolls are stacked vertically, as three sets of six rolls, and shrink wrapped together. The resulting column is cylindrical in shape. General Manager, Matthew Cotton ("Cotton"), testified that the insulation sat on the flat floor without a pallet. Cotton also testified that "the ends" of the columns were not flat and agreed with Plaintiff's counsel that they were "irregular" because they are "bundles of bundles."[3] He later clarified this testimony, stating that although the ends of

---

[1]Where convenient, the Court will use the word "columns" in lieu of "bales." The Court understands the two words to be synonymous.

[2]Where convenient, the Court will use the word "roll" in lieu of "bundle." The Court understands the two words to be synonymous.

[3]Neither party attached photographs of the insulation as exhibits to their briefing. Given the Court's unfamiliarity with insulation nomenclature – "bundles," "bales," "columns," "rolls," etc. – such photographs would have been helpful.

3

the columns are not perfectly flat, they are flat enough to sit on the floor without tipping over.

Individual rolls of insulation were placed adjacent to the larger columns of insulation. On the day in question, Plaintiff attempted to grab an individual roll, which was at roughly his chest level (Plaintiff is 5'10") and had nothing stacked above it. Plaintiff testified that at this time, R.P. was 15 to 20 feet away from him. It is somewhat unclear what happened next. In relevant part, Plaintiff testified as follows: "I'm standing somewhere here, and I was going to get [a roll of insulation]. The thing I remember, last thing, I had to hold on the one particular roll what I need; and next thing, I fell on ground so hard, about [about 10 feet]." Plaintiff was then asked if he saw his son at that time, to which he responded:

> [N]o, but I was laying on my back . . . and then I heard crying. My son was crying so hard . . So my first reaction was when I was laying on the ground I thought he was crying because I fell, and then I told him . . . Daddy's okay, don't worry. I get up, and as soon as I get up, and I found him on the floor. He was laying on the concrete floor.

Plaintiff testified that he did not know what force knocked him to the ground, but that after the fall, "there was lots of insulation rolling on the ground." Plaintiff did not see any roll of insulation fall and knock his son to the ground, however, Plaintiff logically deduced that R.P. had been struck by the insulation.

Plaintiff immediately sought help for R.P., screaming out for assistance. Courtney Miller ("Miller"), a Menards yard worker, responded to a loud noise and came upon Plaintiff and R.P. Miller testified that he saw "one big bundle of insulation . . . laying on the ground." Plaintiff immediately asked Miller to find his wife. While searching for Plaintiff's wife, Miller radioed Cotton, who was at his desk. Cotton, in turn, radioed the Front-End Manager, Kenneth Sericati ("Sericati"), and requested that Sericati bring an accident report to the scene. Cotton testified

4

that at the scene, he saw that one column of insulation had fallen, and that the column did not break apart into individual rolls. Further, the fallen column was from the front row, meaning there was likely no "domino" effect of one column falling on another. Upon arriving at the scene, Cotton called 911. After emergency medical staff arrived, R.P. was taken to the hospital by ambulance.

Miller, Cotton, and Sericati are the only Menards employees who came upon the scene before R.P. was taken to the hospital. However, no one from Menards actually saw the accident happen. On this point, Cotton testified that he is unaware of any fact and/or witness that would indicate that Plaintiff did anything to cause the column to fall. Additional facts are added below as needed.

*Discussion*

Indiana's Comparative Fault Act (the "Act") guides the Court's analysis. Specifically, the Act provides "a scheme for allocating liability among persons whose negligence has contributed to an injury." *Kmart Corp. v. Englebright*, 719 N.E.2d 1249, 1260 (Ind. Ct. App. 1999) (citations omitted). The Act "reflects a legislative determination that fairness is best achieved by a relative assessment of the parties' conduct." *Id*. (citation omitted). "Under the Act, the total fault for an accident is apportioned between the plaintiff, defendant, and any other negligent person who is properly named as a nonparty." *Id*. (citation omitted).

Stated differently, instead of altogether extinguishing the recovery of a slightly blameworthy plaintiff, the Act merely reduces that plaintiff's recovery by his quantified blameworthiness. *Id*. (citing Ind. Code § 34-51-2-5). However, a plaintiff is barred from recovery, as a matter of law, if his contributory fault "is greater than the fault of all persons

5

whose fault proximately contributed to the claimant's damages." Ind. Code § 34-51-2-6. Ordinarily, degree of fault is a question of fact for the jury – but not always. *Owens v. Norfolk Southern Corp.*, 2011 WL 2418703, at *8 (N.D. Ind. June 13, 2011) (citing *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996) (applying Indiana law). The allocation of fault "is not reserved exclusively for a jury when the material facts are such that the fact finder could reach only one logical conclusion." *Id*.

To prevail on the present motion, Plaintiff must, in essence, show that the summary judgment record compels a finding that a reasonable juror could *only* rule that Plaintiff was 100% fault-free. In the Court's view, however, the evidence is not so one-sided and conclusive. Plaintiff may have offered *one* reasonable interpretation of the evidence, but this is not the *only* reasonable interpretation. This ruling is reinforced by Plaintiff's somewhat hazy description of the accident. If the Court cannot discern precisely what happened, then it is difficult, if not impossible, to rule that partial summary judgment is warranted.

Moreover, there is circumstantial evidence to support a trier of fact finding of some comparative fault. Plaintiff was the only person in the immediate vicinity of the insulation and he acknowledged that he was grabbing a roll of insulation when the nearby column fell. Additionally, Cotton testified that columns of insulation have never fallen in the past, and common sense suggests that *some* force precipitated the column's tumble. *See Maroules v. Jumbo, Inc.*, 452 F.3d 639, 641 (7th Cir. 2006) ("Ordinarily we count on gravity to keep heavy items in place; and so when flour barrels, armchairs, and truck wheels become airborne we assume first that something has gone wrong."). Maybe Plaintiff was responsible for exerting some external force against the column; maybe he wasn't. But this uncertainty necessarily

6

precludes the Court from granting the present motion. At the summary judgment stage, the Court's role is not to weigh evidence, and it is only permitted to draw reasonable inferences in Menards' favor. *See Owens*, 2011 WL 2418703, at *1 (citations omitted). Simply stated, only the finder of fact can resolve these questions of fact.

Plaintiff highlights that no eyewitnesses can corroborate the theory the Plaintiff is partially at fault for the accident. However, this argument is flawed. As an aside, the reliability of eyewitness testimony is often called into question. More importantly, a dearth of one specific type of evidence – in this case, eyewitness testimony – cannot bar a juror from employing logic and life experience to arrive at a conclusion. Indeed, jurors rarely make decisions with absolute certitude, but instead must weigh competing inferences based on evidence that is inherently probabilistic. This concept is reflected in the modest threshold for evidence to be deemed "relevant" and the relatively low burden of proof in a civil trial. *See Stewart v. State*, 945 N.E.2d 1277, 1287 (Ind. Ct. App. 2011) (relevant evidence is defined as evidence "having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence") (citation and internal quotations omitted); *Anderson v. Pre-Fab Transit Co., Inc.*, 409 N.E.2d 1157, 1160 (Ind. Ct. App. 1980) ("A preponderance of the evidence means the greater weight of the evidence."). Based on the summary judgment record, a reasonable juror could infer that Plaintiff made contact with the nearby column; this contact was negligent and a proximate cause of R.P.'s injuries; and, in turn, some measure of comparative fault should be allocated to Plaintiff.[4]

---

[4]The parties squabble about whether *res ipsa loquitur* principles apply. This doctrine provides that "[although negligence may not be inferred from the mere fact that an injury occurred, it may be inferred from the circumstances surrounding the injury." *Maroules*, 452 F.3d

7

Finally, it is noted that Menards cites to expert testimony to support its position. Specifically, Louis Inendino opined that "[i]t would require an applied force of over 100 pounds and then a subsequent force of at least 70 pounds to cause a column of three bundles of insulation to fall to the ground." Accordingly, "Mr. Sanjay Patel would have had to apply a force to the column of insulation, consistent with the values I have described above, to cause or contribute to its fall at the time of the reported incident. " This opinion, if considered, would obviously strengthen the Court's view that genuine issues of material fact exist. The Court acknowledges that Plaintiff has filed a Motion to Strike Mr. Inendino pursuant to *Daubert* (Dkt. 95). Even if this motion is granted, it would still not alter the Court's conclusion on the present motion.[5]

### *Conclusion*

For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment (Dkt. 77) is **DENIED**.

SO ORDERED: 08/11/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

at 642. This argument is somewhat academic, however, as the Court's ruling is based on common sense and a lack of clarity in the record. The Court sees no reason to formally couch its decision in a specific legal doctrine.

[5]Nothing in this entry is meant to signal how the Court will rule on the unripe *Daubert* motion relating to Mr. Inendino.

Copies to:

**Richard D. Hailey**
RAMEY & HAILEY
rich@rameyandhaileylaw.com,marcee@rameyandhaileylaw.com

**Jeremy Michael Padgett**
TYRA LAW FIRM P.C.
jerry.padgett@tyralaw.net,amy.heustis@tyralaw.net

**Joel Samuel Paul**
RAMEY & HAILEY
joel@rameyandhaileylaw.com,lawjoel@hotmail.com

**Kevin C. Tyra**
THE TYRA LAW FIRM, P.C.
kevin.tyra@tyralaw.net,amy.heustis@tyralaw.net