UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SANJAY PATEL, on behalf of his minor child, R.P., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CASE NO: 1:09-cv-0360-TWP-DML ) |
| MENARD, INC., | ) ) |
| Defendant. | ) |

# Order on Plaintiff's Motion to Exclude Expert

This matter is before the court on the motion (Dkt. 98) by plaintiff Sanjay Patel, on behalf of his minor child, R.P., to exclude on *Daubert* grounds expert testimony by Louis V. Inendino at the trial of this matter. Defendant Menard, Inc. intends to offer the testimony of Mr. Inendino as expert opinion supporting its affirmative defense that Mr. Patel "caused or contributed to" R. P.'s injuries when, at a Menard retail store, he removed a roll of insulation that was near insulation that fell on R.P.

As indicated by that description, this is a personal injury case. The plaintiff contends that R. P. was severely injured at a Menard's store in Avon, Indiana, while his father (plaintiff Sanjay Patel) was shopping for a roll of insulation at the store. It is not clear exactly what happened. Mr. Patel was in the process of selecting an individual roll of insulation that was in an area adjacent to large columns of insulation. (A column of insulation is a stack of three bundles, with each bundle containing 18 individual rolls of insulation shrink-wrapped together in three layers of six rolls.) The bundles are cylindrical in shape and stacked vertically on each other. (*See Background* section of Court's Entry on Plaintiff's Motion for Partial Summary Judgment, Dkt. 106, at pp. 3-4). The last thing Mr. Patel remembers is holding onto the particular roll he

had selected and then falling hard on the ground. His son, R.P., who was nearby, was also knocked to the ground; there "was lots of insulation rolling on the ground"; Mr. Patel logically deduced that R.P. had been struck by falling insulation. (*Id.*). Apparently, Mr. Patel and R.P. were the only witnesses to the event.

## General Description of Mr. Inendino's Expert Opinion

Mr. Inendino's opinion concerns the amount of force that Mr. Patel would have had to apply to a bundle of insulation to cause or contribute to the fall of bundles within a column at the time of the reported incident. (Dkt. 104-5). Mr. Inendino reached his opinion based on testing he conducted at the Avon, Indiana store with a column of insulation, stacking the bundles within the column at varying levels of "lean angles," and then applying force to the middle bundle until the column of insulation fell to the ground. Mr. Inendino conducted ten separate tests. Mr. Inendino's report explains the basis for his deduction that the type of insulation that fell was a Johns Manville R-11 insulation, with an individual roll dimension of 3 ½ x 15 x 40, and sold in a bundle of 18 rolls per shrink-wrapped bundle. The type of insulation rolls that made up the layered bundles of insulation in the column Mr. Inendino used in his testing is not the type of insulation believed to have fallen on January 11, 2008. That type of insulation did not exist at the time of testing because it had been discontinued by the manufacturer. Mr. Inendino used a Johns Manville R-13 insulation, with an individual roll dimension of 3 ½ x 15 x 32, and sold in a bundle of 18 rolls per shrink-wrapped bundle. He chose it because it was sold in the same manner—i.e., in three layers of six rolls each in a manufacturer shrink-wrapped bundle, like the Johns Manville R-11 insulation believed to have fallen in January 2008.

## Analysis

Federal Rule of Evidence 702 permits expert testimony—defined as testimony regarding scientific, technical, or other specialized knowledge—if the testimony (a) is given by a person qualified as an expert by his knowledge, skill, experience, training, or education; (b) will assist the trier of fact to understand evidence or determine a fact at issue in the case; and (c) is sufficiently reliable; that is, it is based on "sufficient facts or data," "is the product of reliable principles and methods," and "the witness has applied the principles and methods reliably to the facts of the case."

The court serves as gatekeeper to weed out expert testimony that is not sufficiently reliable or relevant to issues in the case, or testimony offered by a person not sufficiently expert in the field of study that his testimony concerns. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). Determining whether expert testimony is sufficiently reliable for a jury to consider requires a flexible approach, and the court may consider a number of factors as part of its inquiry, including: (1) whether the theory or technique can be and has been tested; (2) whether there is a known or potential rate of error in applying the theory or technique; (3) whether it has been subjected to peer review and publication; and (3) whether the relevant scientific community generally accepts as reliable the theory or technique. *Id.* at 593-594; *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149-151 (1999). *See also Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007) (under Fed. R. Evid. 702 and *Daubert,* court determines admissibility of expert testimony based on whether it is both relevant and reliable).

Plaintiff Patel attacks the admissibility of Mr. Inendino's expert opinion testimony on the grounds that (a) Mr. Inendino is not sufficiently expert in the field of study about which his opinion is concerned; and (b) even if he possesses sufficient expertise, his opinion is not reliable

3

or relevant to the issues in this case because the testing on which it is based was not conducted under circumstances sufficiently similar to the conditions that existed when the insulation fell at the Menard's store in January 2008.

### I.     Mr. Inendino has sufficient expertise.

Mr. Patel's attacks on Mr. Inendino's expertise misapprehend the field of study on which his expert opinions are based. Mr. Patel suggests that because Mr. Inendino has not before acted as an expert in cases involving falling bales of insulation (or indeed given expert testimony at any trial), does not have a background in merchandising, and has not written any articles about or focused his studies on big box stores or falling merchandise, then he is not qualified to give expert testimony in this case. Mr. Patel also suggests that because Mr. Inendino has focused his career on vehicular accident reconstruction cases, his expertise is limited to matters involving vehicle accidents.

Mr. Inendino's opinions are not about merchandising or the stacking or stocking of merchandise. His opinions are not about whether Menard's stacking or stocking of insulation bales was safe or unsafe, or good or bad, or normal or unusual.[1] Rather, Mr. Inendino attempted to recreate as close as possible the physical set of circumstances—including the stacking or stocking of insulation bales—that existed at the time of the accident. The information to recreate those circumstances was derived primarily from photographs taken on the day of the accident, as

---

[1]     The court notes here, however, that Mr. Inendino's report does contain a sentence describing the "unsafe positioning of bundles configured for Test 10. . . ." *See* Dkt. 104-5 at p. 13. The court finds that there is no showing that Mr. Inendino has the expertise to describe positioning as "unsafe" or to determine whether it was likely or not that the bundles on the date of the accident were in the positions similar to his Test 10. Mr. Inendino may, however, explain the lean angles selected for Test 10, the results of the testing, and how and why those results compare to the results for his other tests. Menard must look to someone other than Mr. Inendino if it wishes to provide any testimony about whether the positions of the bundles for Test 10 were likely similar in position or not, or safe or not.

4

well as from testimony from Mr. Patel and a Menard's store manager about the physical set of circumstances that existed that day and testimony from the latter about the usual store practices for stacking or stocking insulation bales, bundles, and columns. The stacking or stocking of insulation served as the factual assumptions on which Mr. Inendino's testing and expertise were brought to bear.

The fact that Mr. Inendino has focused his professional life on testing involving the reconstruction of motor vehicle accidents does not make him unqualified as an expert on other matters. Mr. Inendino's opinions are based on principles of engineering and physics, and his curriculum vitae indicates that he has the educational background and experience to understand and apply the engineering and physics principles described in his report.

## II.    Mr. Inendino's opinions are sufficiently reliable and relevant to be heard by the jury.

Mr. Inendino purported to replicate as near as possible the physical set of circumstances that existed at the Menard's Avon, Indiana store on the date of the accident. Then, using principles of physics, he tested the amount of force necessary to be applied to a bundle of insulation before the column of which it was a part would fall to the ground. Mr. Patel does not attack the engineering or physics principles regarding force as unreliable science. Instead, he contends that Mr. Inendino's opinions are unreliable and irrelevant because Mr. Inendino did not have sufficient information to recreate the circumstances as they existed when his son was hurt and did not have the exact type of insulation that was stacked on the date of the accident. Mr. Patel points out that Mr. Inendino: (a) did not interview the employees who originally stacked the insulation bales and that he used a different fork lift operator on the day of his testing than the one who apparently stacked the insulation bales that existed on the day of the accident; (b) did not know exactly the lean angles among the bundles as they existed on the day of the

5

accident or their center of gravity; (c) obtained some information used in designing his testing protocol from Menard's counsel; and (d) has no idea exactly what Mr. Patel did in applying force to bundles that would have caused them to fall.[2]

The court is persuaded that Mr. Patel's challenges to Mr. Inendino's opinions go to the weight of his testimony and not its admissibility as irrelevant or unreliable. Here, an expert has attempted to recreate an accident by recreating the physical circumstances that existed when the accident happened and has conducted scientific or other tests on those physical circumstances, and has then drawn conclusions based on the results of the testing. The court's gatekeeping function in these circumstances is to determine whether the conditions upon which the expert's tests were conducted were sufficiently similar to those that existed when the accident happened so as to make the opinion relevant to the case and thus helpful to the jury. *See United States v. Norris,* 217 F.3d 262, 270 (5th Cir. 2000) (admission of opinion grounded on experiments or testing using a recreated set of circumstances depends on whether the conditions used for the testing were similar to the conditions that are the subject of the litigation); *Estate of Bruess v. Blount Internat'l, Inc.,* 2011 WL 2680760 at *21 (N.D. Iowa. July 8, 2011) (quoting *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1401 (8th Cir. 1994) (court "'may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions.'"); *Hendrix v. Evenflo Co.,* 255 F.R.D. 568, 588 (N.D. Fla. 2009) (finding that conditions of testing of accident involving infant car seat were "on the whole"

---

[2] Mr. Patel also faults Mr. Inendino's failure to videotape his testing, and asserts that Mr. Inendino's tests cannot be duplicated. (Dkt. 96 at p. 12). Mr. Inendino's report, however, describes in fair detail all of the steps Mr. Inendino followed in conducting his tests, and it appears to the court that one could re-enact Mr. Inendino's testing if one were so inclined. Mr. Patel does not identify any particular information missing from Mr. Inendino's description of his testing that makes it difficult or impossible to re-enact his testing.

substantially similar to those present at the time of the accident to make the test methodology reliable and relevant to the case).

As noted, Mr. Patel points out some ways in which Mr. Inendino's testing did not match the conditions on the date of the accident or ways in which it is impossible to know whether the testing conditions were the same as on the date of the accident. In this case, those differences properly are the province of cross-examination. Mr. Inendino's report explains the reasons he chose the insulation he chose,[3] and the reasons he chose the varying levels of lean angles and numbers of bundles in a column to account for a broad range of stacking conditions likely to have existed on the date of the accident. He explained why he could not use the exact insulation that was present the day of the accident, and why he chose—in consultation with defense counsel—the "substitute" insulation as a reasonable facsimile. The court is not persuaded that the differences between the actual conditions and Mr. Inendino's varying testing conditions are enough to make Mr. Inendino's tests unreliable and not relevant to this case. They go to the weight of the evidence. The trial court's gatekeeper role is not "meant to supplant the adversary system, or the role of the jury." *Aguinaga v. AMLI at Riverbend, L.P.,* 2010 WL 3326847 at *3 (S.D. Ind. Aug. 20, 2010) (internal citations omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ball v. Versar, Inc.,* 454 F.Supp.2d 783, 799 (S.D. Ind. 2006) (quoting *Daubert,* 509 U.S. at 596).

---

[3] The court notes that Mr. Inendino's report explains that the R-13 insulation he used weighs about 22% more than the R-11 insulation involved in the accident, and that he testified in his deposition regarding his belief that the R-13 insulation was similar enough to support his conclusions. *See* Dkt. 104-1 (deposition at pp. 29-30).

**Conclusion**

For the foregoing reasons, the plaintiff's motion to exclude Mr. Inendino as an expert witness is DENIED.

So ORDERED.

Date:  09/16/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Richard D. Hailey
RAMEY & HAILEY
rich@rameyandhaileylaw.com

Jeremy Michael Padgett
TYRA LAW FIRM P.C.
jerry.padgett@tyralaw.net

Joel Samuel Paul
RAMEY & HAILEY
joel@rameyandhaileylaw.com

Kevin C. Tyra
THE TYRA LAW FIRM, P.C.
kevin.tyra@tyralaw.net